# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **DR. SARAH ADAM, M.D.,** *Plaintiff,* v. **MEDICAL CENTER OF NAVICENT HEALTH,** *et al.*, *Defendants.* | **CIVIL ACTION NO. 5:18-cv-00084-TES** |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Medical Center Navicent Health's ("Navicent") Motion to Dismiss [Doc. 15] Plaintiff Sarah Adam's ("Plaintiff") First Amended Complaint [Doc. 13]. Plaintiff's First Amended Complaint states that

> [t]his cause of action arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* (hereinafter "Title VII") and 42 U.S.C. § 1981 (hereinafter "Section 1981"), seeking a remedy for national origin discrimination and retaliation in employment. Plaintiff further seeks a remedy for religious discrimination in employment under Title VII.

[Doc. 13, at ¶ 1]. It its motion, Navicent contends that Plaintiff's First Amended Complaint should be dismissed on the basis that she (1) failed to file her both her Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination and this action within the applicable limitations periods and (2) cannot state a claim for national origin discrimination under Section 1981 because Section 1981 is limited to claims based

on race discrimination. [Doc. 15-1, at p. 1]. For the following reasons, the Court **GRANTS** Navicent's Motion to Dismiss [Doc. 15].

## PROCEDURAL BACKGROUND

On February 6, 2018, Plaintiff, proceeding *pro se*, filed her initial Complaint in the United States District Court for the Southern District of Mississippi. [Doc. 1, at p. 1]. Because Plaintiff's Complaint concerned incidents that allegedly occurred in Macon, Georgia, the United States District Court for the Southern District of Mississippi, in lieu of dismissal, transferred her action to this Court. [Doc. 2]. Fearing expiration of the deadline imposed by Federal Rule of Civil Procedure 4(m), Plaintiff requested an additional "30 days[] in which to serve the summons and complaint on Defendants Medical Center of Navicent Health, et al." [Doc. 5]. Given Plaintiff's *pro se* status (at that time), the Court granted Plaintiff's request and gave her until June 7, 2018, to serve Defendants. [Doc. 6]. However, on June 7, 2018, with service still not perfected, Plaintiff sought an additional 60 days to serve her Complaint. [Doc. 7]. Finding that Plaintiff's second request for extension "fail[ed] to show good cause as required by Rule 4(m)," the Court partially denied her relief and ordered that "service be made within 30 days." [Doc. 8, at p. 3]. Thus, Plaintiff had until July 9, 2018, to serve process. [*Id.* at p. 4].

On this latest deadline, Plaintiff's newly-retained counsel filed a Notice of Appearance [Doc. 9] along with a *third* extension request [Doc. 11]. Given the circumstances surrounding this case, the Court, despite its previous warnings that "no

2

further . . . extensions of time [would] be given" nonetheless relented and granted her lawyer an extension "until and including July 23, 2018, to serve process upon Defendants." [Doc. 12]; *see also* [Doc. 8, at p. 4]. On July 20, 2018, Plaintiff filed her First Amended Complaint [Doc. 13], and finally, on July 23, 2018, "Medical Center Navicent Health" received service. [Doc. 14]. Fourteen days later, Navicent filed the instant Motion to Dismiss [Doc. 15].

## FACTUAL BACKGROUND

The allegations set forth below are taken from Plaintiff's First Amended Complaint[1] and assumed to be true for the purposes of ruling on Navicent's Motion to Dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Plaintiff is a Muslim of Middle Eastern origin who was born in, and remains a citizen of, Egypt prior to immigrating to the United States. [Doc. 13, at ¶ 5]. While Plaintiff is fluent in English, her English is accented due to her national origin. [*Id.* at ¶ 6]. After completing a seven-year medical degree program in Egypt, followed by a four-year Obstetrics and Gynecology program, Plaintiff became a fully trained OB/GYN. [*Id.* at ¶ 7]. Navicent hired Plaintiff on or about June 26, 2016, and she officially started her residency with Navicent on or about June 27, 2016. [*Id.* at ¶¶ 8-9].

---

[1] "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Schreane v. Middlebrooks*, 522 F. App'x 845, 847 (1tth Cir. 2013) (citing *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir.1982)).

During her employment, Plaintiff alleges that other employees' questions about her national origin, her background, as well as what churches she attended made her uncomfortable. [*Id.* at ¶ 10]. Because co-workers allegedly asked Plaintiff questions about her religion, her family's political and social learnings, politics in the Middle East, and whether she came to the United States to escape the revolution in her country, it became clear to Plaintiff that those she worked with, within her rotation, knew she was Muslim. [*Id.* at ¶¶ 13, 14]. Specifically, Plaintiff states that on one occasion, a co-worker told Plaintiff about her brother's service in the Iraq War purportedly in a manner that caused Plaintiff to believe that the co-worker was taunting her about events related to turmoil in the Middle East. [Doc. 13, at ¶ 14]. Despite Plaintiff's attempts to avoid political discussions, she complains that Dr. Alyson Pico initiated conversations about politically related topics on several occasions. [*Id.* at ¶ 16].

After being employed by Navicent for only one week, Plaintiff reported Dr. Pico's alleged harassment to the Residency Program Director, Dr. Kristina Hawkins. [*Id.* at ¶ 19]. However, Plaintiff claims that Dr. Hawkins, along with Dr. Woodham Padmashree, spoke very harshly to Plaintiff and circulated rumors and false allegations of poor work performance in an effort to make Plaintiff seem incompetent. [*Id.* at ¶¶ 20- 21]. Plaintiff, via email, reported these allegations on or about August 11, 2016, to the Department Chairman, Dr. William Butler. [*Id.* at ¶¶ 22, 25]. To further support her claim, Plaintiff alleges that Dr. Butler, in addition to avoiding direct conversation with Plaintiff in spite

4

of her repeated requests to meet with him, changed his rotation schedule so he would not have to work with or train Plaintiff because she is Muslim. [*Id.* at ¶¶ 17-18]. Instead of receiving assistance regarding her claims of harassment, Plaintiff alleges that Navicent "retaliated against her with first a verbal warning from Dr. Butler." [Doc. 13, at ¶ 26]. Apparently, Dr. Hawkins advised Plaintiff that if she kept claiming that she was being discriminated against then there would be no place for her in the residency program. [*Id.* at ¶ 27]. To that end, Plaintiff claims that Dr. Hawkins stated that "she was not going to terminate the Plaintiff but that she need [*sic*] to protect the legal position of the institution." [*Id.*].

However, on or about September 26, 2016, Navicent placed Plaintiff on probation and later suspended her on October 4, 2016. [*Id.* at ¶¶ 28-29]. Finally, Plaintiff alleges that following her suspension, Navicent posted Plaintiff's photograph in her department "along with a note stating that [*sic*] was not allowed to enter the building" and that her access to the computer was temporarily suspended. [*Id.* at ¶ 30]. On or about November 13, 2016, Navicent terminated Plaintiff, and the next day, a police officer delivered Plaintiff's termination letter to her home. [*Id.* at ¶ 31]. Two days after refusing to sign a "waiver of her legal rights" upon delivery of her termination letter, police arrested

Plaintiff for stalking[2]—an activity Plaintiff contends she "was not engaged in."[3] [Doc. 13, at ¶ 32].

In light of the allegations set forth above, Plaintiff sets out three counts in her First Amended Complaint: Title VII: Religious Discrimination & Retaliation (Count 1), Title VII: National Origin Discrimination & Retaliation (Count 2), and Section 1981: National Origin Discrimination & Retaliation (Count 3). [*Id.* at pp. 8-12].

## DISCUSSION

A. **Standard of Review**

Navicent seeks to dismiss Plaintiff's action against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, a district court must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 572. Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In fact, a well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very

---

[2] On November 4, 2016, Plaintiff received, signed, and acknowledged a "Loitering Warning" from the Navicent Health Police Department. [Doc. 7-5]. This warning notified Plaintiff that she "ha[d] been found loitering on Navicent Health properties" in violation of Ga. Code. Ann. § 16-11-36. [*Id.*]. Navicent Health authorities further informed Plaintiff that she must "leave the property and not [] return unless [she] need[ed] medical treatment" or had other legal reasons to be on Navicent Health's property. [*Id.*]. Finally, the warning notified Plaintiff that "[i]f you do NOT comply with this warning you can be arrested under Georgia State Law." [*Id.* (emphasis in original)].

[3] According to Plaintiff's First Amended Complaint, Navicent did not pursue any criminal charges against Plaintiff following her eventual arrest (presumably on November 15, 2016) and the three-count Accusation filed in the State Court of Bibb County, Georgia, was *nolle prossed* on November 6, 2017. [Doc. 1, at ¶ 32]; *see also* [Doc. 7-2, at p. 1].

6

remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Id.* at 678. Further, a complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555 (first alteration in original). Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. With the foregoing standard in mind, and taking the facts asserted in Plaintiff's First Amended Complaint as true, the Court rules on the Navicent's Motion to Dismiss [Doc. 15].

B.  **Plaintiff's Title VII Claims: Religious Discrimination & Retaliation (Count 1) and National Origin Discrimination & Retaliation (Count 2)**

In its first argument in favor of dismissal, Navicent contends that Plaintiff's Title VII claims are time-barred because she (1) failed to file her Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(1)'s limitations period and (2) failed to timely file her EEOC Charge of Discrimination. [Doc. 15-1, at pp. 5-6].

  *a.*  *42 U.S.C. § 2000e-5(f)(1)'s 90-Day Limitations Period*

Section 2000e-5(f)(1) of Title VII mandates that "within ninety days after the giving of such notice[,] a civil action may be brought against the person named in the charge." 42 U.S.C. § 2000e-5(f)(1). Essentially, once the EEOC issues its Dismissal and Notice of Rights form, a plaintiff must file her lawsuit "WITHIN 90 DAYS of [her] receipt of th[e] notice." [Doc. 1-1, at p. 1 (emphasis in original)]. In this case, the EEOC issued its Notice of Suit Rights ("Right-to-Sue Letter") on October 20, 2017. [*Id.*]. Plaintiff's EEOC forms clearly state that "[i]n order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* **this notice**." [Doc. 1-1, at p. 2 (emphasis in original)]. However, in the same paragraph, the form also stresses that, "in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was**

*mailed*[4] **to you** (as indicated where the Notice is signed) or the date of the postmark, if later." [*Id.* (emphasis in original)].

Plaintiff's former attorney forwarded notice of her right-to-sue letter on November 7, 2017, and Plaintiff filed her lawsuit in the Southern District of Mississippi 91 days later—on February 6, 2018. [Doc. 1]; *see also* [Doc. 1-1, at p. 3]. Despite the apparent date calculation issues regarding *when* the limitations period actually began, even using the "date [Plaintiff] receive[d]" her right-to-sue letter (November 7, 2017) as the operative date, her lawsuit was not timely filed. In order for Plaintiff's suit be considered timely, she needed to file her initial Complaint no later than February 5, 2018. Whatever reasons Plaintiff may have for filing her lawsuit one day late, when it comes to "[p]rocedural requirements established by Congress for gaining access to the federal courts" these requirements "are not to be disregarded by courts out of a vague sympathy for particular litigants." *Jackson v. Georgia Dep't of Hum. Res./Division of Fam. and Child. Serv's*, No. 5:07-cv-351(CAR), 2008 WL 2074379, at *1 (M.D. Ga. May 15, 2008) citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Accordingly, the Court finds that Plaintiff failed to comply with the statutory 90-day filing requirement established by 42 U.S.C. § 2000e-5(f)(1).

---

[4] If October 20, 2017, the date stamped on Plaintiff's right-to-sue letter, were to be the operative date to determine timeliness for this case, Plaintiff filed her initial Complaint 109 days after the EEOC mailed its right-to-sue letter. [Doc. 1-1, at p. 1].

b.  *42 U.S.C. § 2000e-5(e)(1)'s 180-Day Limitations Period*

In addition to failing to meet the 90-day limitations period discussed above, Plaintiff also failed to file her EEOC Charge of Discrimination within the 180-day limitations period under 42 U.S.C. § 2000e-5(e)(1). Title VII provides that a plaintiff wishing to file a discrimination claim with the EEOC must do so within 180 days of the occurrence of the alleged unlawful employment practice. *Pearson v. Macon-Bibb Cnty. Hosp. Auth.*, 952 F.2d 1274, 1279 (11th Cir. 1992); citing [42] U.S.C. § 2000e-5(e)(1). "To determine the triggering of the statute, 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.'" *Id.* (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam)).

Here, Plaintiff avers that Navicent informed her it its decision to terminate her employment on November 13, 2016, via a termination letter delivered on November 14, 2016, by a police officer. [Doc. 13, at ¶¶ 31-32]. This means that Plaintiff, in order to comply with Title VII's time-filing provisions, had until May 13, 2017, to file her discrimination claim with the EEOC. Navicent represents that Plaintiff filed her discrimination claim with the EEOC on June 17, 2017, some 215 days after the alleged unlawful employment practice.[5] Regardless of the operative filing date, Plaintiff fails to dispute, respond to, or otherwise address Navicent's arguments concerning the 180-day

---

[5] Navicent alleges that June 17, 2017, is the date on which Plaintiff filed her claim of discrimination with the EEOC. [Doc. 15-1, at p. 6]. Plaintiff does dispute this date.

limitations period and the timeliness of Plaintiff's EEOC claim of discrimination in her Response [Doc. 19].

Thus, given Plaintiff's failure to respond to those arguments, as well as those regarding Title VII's 90-day limitations period, she essentially abandons those claims and concedes that all of her Title VII claims are untimely. *See Brantley v. Muscogee Cnty. Sch. Dist.*, 906 F. Supp. 2d 1307, 1327 (M.D. Ga. 2012) *aff'd* 535 F. App'x 912 (11th Cir. 2013); *see also Love v. Tift Cnty. Ga.*, 7:08-cv-62(HL), 2010 WL 1257998, at *10 (M.D. Ga. Mar. 29, 2010) (citing *Resolution Trust Corp. v. Dummar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (finding that a plaintiff abandons his or her claim if he or she fails to respond to an argument or otherwise address the claim)). Accordingly, the Court **GRANTS** Navicent's Motion to Dismiss [Doc. 15] and **DISMISSES** all of Plaintiff's Title VII claims contained in Count 1 and Count 2 of her First Amended Complaint.

C. **Plaintiff's Section 1981 Claims: National Origin Discrimination & Retaliation (Count 3)**

Lastly, Navicent seeks to dismiss Plaintiff's claims of national origin discrimination and retaliation brought under 42 U.S.C. § 1981. "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Tippie v. Spacelabs Medical, Inc.*, 180 F. App'x 51, 56 (11th Cir. 2006) (citing *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999)). Thus, by its own terms, § 1981 applies to claims of discrimination based on race, not national origin. *Tippie*, 180 F. App'x at 56 (citing 42 U.S.C. § 1981(a)). Plaintiff's First

Amended Complaint completely lacks any mention of race discrimination or her race in general. Plaintiff's allegations that Navicent "harassed and discriminated against the Plaintiff because she was born in Egypt and was of Middle Eastern descent" cannot, even with the most generous of readings, present a discrimination claim based on race. [Doc. 13, at p. 11, ¶ 49].

In her Response, Plaintiff contends, in addition to her argument that there remains a number of sociological questions about what constitutes race and national origin, that Navicent, in its dismissal motion, attempts to force Plaintiff to prove her entire case based solely on her Complaint. [Doc. 19, at pp. 1, 3]. This position is simply wrong. Navicent's dismissal motion never touches the merits of either a national origin or race discrimination claim. *See generally* [Doc. 15-1]. Furthermore, Navicent's motion does not even address specific standards under the applicable Federal Rules of Civil Procedure or relevant caselaw requiring plaintiffs to meet certain "notice-pleading" standards. *See, e.g.*, *Twombly*, 550 U.S. at 555. Aside from its arguments concerning the timeliness of Plaintiff's Title VII claims, Navicent's motion, to the contrary, is simply based on the general pleading of Plaintiff's First Amended Complaint—that she cannot state a claim of national origin discrimination and retaliation under § 1981. Therefore, the Court **GRANTS** Navicent's Motion to Dismiss [Doc. 15] and **DISMISSES** Plaintiff's § 1981 claims contained in Count 3 of her First Amended Complaint.

In an apparent attempt to combat a potentially adverse ruling as to Navicent's dismissal motion, Plaintiff responded by requesting the Court permit her to file a second amended complaint. [Doc. 19, at p. 5]. However, a party does not properly move the Court for permission to file an amended complaint by imbedding the request in a responsive pleading. *See* Fed. R. Civ. P. Rule 7(b)(1); *see also Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Accordingly, the request to amend the Complaint is not properly before the Court and cannot be considered. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999).

If, after reading Navicent's arguments [Docs. 15-1, 20 respectively], Plaintiff believed that her First Amended Complaint was insufficient, she should have properly moved for leave to file her proposed second amended complaint (ostensibly to plead the proper statutes accompanied by the appropriately detailed facts to support her allegations). *See* Fed. R. Civ. P. 15(a)(2). Given Plaintiff's failure to do so, the Court will not permit her to do that now, especially given the numerous opportunities Plaintiff could have used to perfect her pleadings. *Space Coast Credit Union v. Lynch*, No. 12-60430-CIV, 2014 WL 1230719, at *7 (S.D. Fla. Mar. 25, 2014) (quoting *Rosenberg*, 554 F.3d at 967 (11th Cir. 2009) ("[W]hen, as here, a request for leave to amend 'simply is imbedded within an opposition memorandum, the issue has not been raised properly,' and the

Court may deny that request without further discussion."); *see also Blash v. City of Hawkinsville and Pulaski Cnty., Ga. Sheriff's Office*, No. 5:17-cv-00380-TES, 2018 WL 3150346, at *11 (M.D. Ga. Jun. 27, 2018) (citing *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (holding that "leave to amend is by no means automatic")). Plaintiff drafted her First Amended Complaint [Doc. 13], filed it, and chose not to exercise her right to *properly* seek the opposing party's written consent or the court's leave to further amend her complaint. *See* Fed. R. Civ. P. 15(a)(2). Thus, Plaintiff must rely upon her First Amended Complaint as it is currently written.

## **CONCLUSION**

Based on the above discussion, the Court **GRANTS** Navicent's Motion to Dismiss [Doc. 15] and **DISMISSES** Plaintiff's First Amended Complaint [Doc. 13].

**SO ORDERED**, this 2nd day of October, 2018.

                                      **S/ Tilman E. Self, III**
                                      **TILMAN E. SELF, III, JUDGE**
                                      **UNITED STATES DISTRICT COURT**